THE TOWN OF RYEGATE v. THE TOWN OF WARDSBORO.

*Construction of statutes. Paupers.*

The true rule for the construction of statutes is to look to the whole and every part of the statute, and the apparent intention derived from the whole, to the subject matter, to the effects and consequences, and to the reason and spirit of the law; and thus to ascertain the *true* meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the words. ALDIS, J.

An order of removal of a pauper from the town of R. to the town of W. (his settlement being in the latter town), was obtained under the 4th section of the XVIII chap. Comp. Stat. p. 130, but the Supreme Court decided that though the pauper's settlement was in the town of W., yet, he was unduly removed, because *he had not gone to the town of R. to reside there*, but was a *transient person*, and, therefore, that the proper remedy of the town of R. was by an action against the town of W. for money expended in the support of the pauper, under the sixteenth section of the same chapter; and the case was remanded to the county court, where the town of R. consented to a judgment that the pauper was unduly removed, for the reason above stated, whereupon the town of W. claimed to recover of the town of R. the amount paid out by it for the support of the pauper after his removal. *Held*, that though the letter of the ninth sec. provided for such a recovery, yet, it was contrary to the pauper laws, and to the intention of the fourth, ninth, tenth, and sixteenth sections, when taken together, and therefore could not be obtained.

APPEAL from an order of removal of Elijah Perry, a pauper from the town of Ryegate to the town of Wardsboro. In the order of removal, which was made under the fourth section of chap. XVIII. of the Comp. Stat., page 130, the pauper was adjudged *to have come to reside in the town of Ryegate,* to have become charge-able upon said town, and to have his legal settlement in the town of Wardsboro. The defendant pleaded first *that the pauper had not come to reside in the town of Ryegate,*—second, that he was not chargeable or likely to become chargeable to that town ; and third, that his legal settlement was not in the town of Wardsboro. The case was first tried at the the June term, 1855, and resulted in a general verdict upon all the issues in favor of the town of Rye-gate, and judgment was rendered that the pauper was duly removed. The case went to the supreme court upon exceptions

Ryegate *v.* Wardsboro.

to the charge of the court below, and the judgment of the county court was reversed upon the ground that, upon the facts proved, and found by the jury, the pauper *had not come to reside in the town of Ryegate,* so as to be liable to be removed by an order of removal, but was a *transient person,* and that the remedy for Ryegate was to sue Wardsboro for his support in an action for money laid out and expended, according to the 16th section of chapter 18 of the Comp. Stat., p. 133, and the case was accordingly remanded to the county court. where it was again tried by the Court, POLAND, J. presiding.

At this second trial the town of Ryegate consented to a judgment that the pauper was unduly removed under said order, because he *had not come to reside in the town of Ryegate.*

The town of Wardsboro thereupon claimed to recover of the town of Ryegate for the support of the pauper from the time he was removed under said order.

The town of Ryegate objected to such allowance on the ground that by the facts found upon the former trial the settlement of the pauper was in the town of Wardsboro, and that that town was bound by law to maintain the pauper. But the court decided that, although the settlement of the pauper was in the town of Wardsboro, yet as he was unduly removed under said order, and judgment had been so rendered, by the terms of the statute, the town of Wardsboro was entitled to recover for the support of the pauper, and the court rendered judgment in favor of the town of Wardsboro for $118.17, for supporting the pauper, and for costs.

The town of Ryegate excepted to this allowance for the support of the pauper.

*Bliss N. Davis,* for the plaintiffs.

*Peck & Colby,* for the defendants.

The opinion of the court was delivered by

ALDIS, J. The provisions of the Compiled Statutes relating to the support and removal of paupers, are substantially derived from the act of March 3d, 1797. That act, in its first section, defined what should be deemed a legal settlement. Its provisions have

since been greatly modified, and it now forms a separate chapter of the statutes. After defining a legal settlement, the act of 1797, in its second and subsequent sections, prescribed the manner in which paupers might be removed to the place of their legal settlement, and in which the towns that had incurred expenses on account of such paupers might recover them of the towns in which such paupers had their settlement.

The whole basis of the act of 1797, and of all the subsequent legislation of this state, has been, that paupers should be supported by the towns in which they were legally settled; hence all the various acts regulating and modifying the conditions upon which the settlement of paupers could be acquired; hence the enactments as to the removal of paupers, and the manner in which the rights of the various towns can be enforced. The corner stone of the whole pauper law on this subject has always been that paupers should be supported by the towns in which they are legally settled.

The order of removal in this case was not quashed because the person removed was not a pauper, nor because he did not have a legal settlement in the town of Wardsboro. The case finds that he was a pauper, and that he had a legal settlement in Wardsboro. The judgment that he was unduly removed was rendered upon the ground that the supreme court had decided that the pauper had not come to reside in Ryegate, so as to be liable to be removed to Wardsboro, by an order of removal, but was a transient person; and that the remedy for Ryegate was to sue Wardsboro for his support in an action for money laid out and expended, according to the sixteenth section of the statutes relating to the support and removal of paupers. It is at this point that the difficulty arises. The statute enacts that "if upon the trial of an appeal from an order of removal it shall be determined that such stranger was unduly removed, the court shall award to the appellant so much money as shall appear to have been reasonably paid and expended by him for the support of such stranger."

These are very plain words. The judgment of unduly removed has been rendered, and thereupon, following the words of the statute, the county court awarded to the appellant (Wardsboro) to recover of Ryegate one hundred and eighteen dollars and seventeen cents for moneys expended by Wardsboro in the support of

Ryegate *v.* Wardsboro.

*its own* pauper. This singular result inevitably follows from a literal construction of the statute.

Hence the question arises,—are we at liberty, when the words of the statute are plain and unambiguous, but are directly repugnant to the whole spirit and intent of all our legislation on the.same subject and in the same act, and seem to involve an absurdity,—to disregard the letter of the law, and attach to it that meaning which the legislature really intended.

It is urged that when the language of a statute is plain, clear and intelligible, it is itself the *best,* and should be *the only* expositor of the meaning of the legislature. Theoretically this argument would seem to furnish a safe rule of interpretation. Practically it is not always safe or sensible. A rigid adherence to it would not not unfrequently involve us in contradictions, absurdities and palpable violations of the real intention of the legislature. The ignorance and inexperience of some legislators, the inability even of the wisest to foresee all the bearings and connections of an act— the great number of statutes proposed for enactment, and the variety of minds that modify and amend them,—the haste of legislation,—the imperfection of language, and want of skill, accuracy and perspicuity in the use of it,—and, not unfrequently, want of accuracy and clearness of ideas;—these all contribute to produce errors, imperfections and inconsistencies in the phraseology of statutes. Hence the letter of the law is found by experience not to be in all cases a correct guide to the true sense of the lawgiver. Hence have arisen those rules for the construction of statutes which look to the whole and every part of a statute, and the apparent intention derived from the whole, to the subject matter, to the effects and consequences, and to the reason and spirit of the law; and thus ascertain the true meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the words.

A familiar illustration of the application of this principle we have in the decisions of our courts relating to the action of ejectment. By statute the judgment in ejectment is conclusive as to title against all the parties to the action. But it has been held, where the defendant recovers because the plaintiff could not prove him in possession, the judgment is not conclusive. But illustrations and authorities are unnecessary to sustain a principle so well settled.

---

---

·We may, however, refer to one derived from an old book, which, in its treatise on this subject, Judge Story calls "an excellent summary of the rules for construing statutes ;"—and which for its sense and point is worthy of attention.

"In some cases the letter of an act of parliament is restrained by an equitable construction ; in others it is enlarged ; in others *the construction is contrary to the letter.* In order to form a right judgment, whether a case be within the equity of a statute, it is a good way to suppose the law maker present ; and that you have asked him this question : Did you intend to comprehend this case ? Then you must give yourself such answer as you imagine he being an upright and reasonable man would have given. If this be, that he did mean to comprehend it, you may safely hold the case to be within the equity of the statutes ; for while you do no more than he would have done, you do not act contrary to the statute, but in conformity thereto."

Applying this rule to the case at bar, we think all must agree that if the law maker were present, and so interrogated, he would answer that he did not intend to comprehend it within this statute. To hold to the contrary, would attribute to this section a meaning repugnant to the whole spirit and reason of this statute,— in direct conflict with other sections of the act, and with the very basis of all our legislation on this subject. It is obvious that by *the trial* on the appeal mentioned in this section, the legislature meant a trial on the merits ; and that the judgment of unduly removed should be rendered because unduly removed to a town in which the pauper had no settlement. The statute did not contemplate the trial of an issue so wholly immaterial as this,—whether the pauper was " a stranger come to reside," &c., or a " transient person ;" for whether he was the one or the other, the town in which he had a settlement was equally bound to support him. The trial intended is plainly to be seen from the direction given in the fourth section as to the subjects upon which the two justices are to inquire before making an order of removal. They are to examine "touching the ability and place of settlement of the pauper." They are not directed to inquire whether he is a transient person, or a stranger come to reside in the town. It would be absurd that a mistake by the overseer of the poor, as to the remedy for an injury to

Ryegate *v.* Wardsboro.

the rights of the town, should have the effect for the time being of destroying them.

So the tenth section, though not a part of the act of '97, and comparatively a recent enactment, clearly shows the intent of the act. "If the order of removal is quashed, or it shall be determined the pauper was unduly removed, *if the pauper is not settled in the town to which he is removed,* the town making the removal shall take back the pauper," &c. But if settled in the town to which he he is removed, he is not to be taken back though unduly removed.

The pauper being a transient person, the town of Ryegate could have recovered under the sixteenth section for the expense of his support in an action for money laid out and expended, from the town of Wardsboro. This involves this curious inconsistency with the construction claimed for the ninth section. By the sixteenth section if Ryegate had supported the pauper during the pendency of this suit, it could have recovered therefor by an action against Wardsboro; but as Wardsboro has furnished the support, that town, under the construction which defendant puts on the ninth section, can now recover it of Ryegate.

We cannot but remark, that the incongruity of the literal construction with the whole spirit of the statutes on this branch of the law, is so obvious that the learned and ingenious counsel for the appellants have not attempted to rest their case upon the ground of the inconsistency or reasonableness of such construction; but upon the obligation of the court to adhere to a strict and literal interpretation. It is clear to us that the true meaning of the statute cannot be reconciled with the literal meaning of the words. In such case the letter of the law must yield to its spirit and intent.

The sum awarded by the county court to the defendants for the support of the pauper ($118.17) we deem improperly allowed.

As the statute provides that the county court may allow such sums of moneys expended in and about the appeal as they shall deem the appellants equitably entitled to, together with costs; and as for such sums we deem the appellees properly liable, being in like situation with other parties in court who have mistaken their remedy; and as the county court have allowed such sums therefor as in their discretion were equitable, we do not deem their taxation thereof properly revisable in this court. As the plaintiffs succeed in their exceptions, they are entitled to costs in this court.

The judgment of this court is that the judgment of the county court is reversed as to the allowance of the sum of one hundred and eighteen dollars and seventeen cents—that the judgment is affirmed as to the sums allowed by the county court for "moneys expended in and about said appeal, together with costs," deducting therefrom the costs of the appellees in this court.