Thomas J. Baker, Aplt. *v.* Joseph Jacobs.

# THOMAS J. BAKER, APLT., *v.* JOSEPH JACOBS.

*Treating jurors. Tobacco is within R. L. 997. Construction of statutes.*

1.  Whether or not tobacco be "victuals or drink," (in the opinion of Taft, J., it is both) the furnishing of it to a juryman by way of treat is within the purview of R. L. s. 997; and if a party after trial in the County Court assembles the jurors and pays the cigars, a verdict in his favor will be set aside.

2.  In construing a statute the trend of previous legislation upon the same subject-matter may be considered to ascertain the intent of the legislature.

Assumpsit. Trial by jury at the December term, 1890, Lamoille county, Ross, J., presiding. Verdict for the plaintiff. After verdict the defendant moved to set aside the same. The court granted the motion as a matter of law and not discretion. The plaintiff excepts.

The case appears in the opinion.

*P. K. Gleed,* for the plaintiff.

This case must be judged by the ordinary customs of the time and place. Giving a friend a cigar in these last days is by common custom as usual, as harmless and commendable as was once the giving of a cup of cold water. One of Vermont's greatest statesmen has been often censured because he so seldom conformed to this universal social custom.

What if the plaintiff had furnished the jury a drink of water, or a pinch of snuff, a clove, or a tooth-pick? Would that have set aside the verdict?

Must it be said that this court by solemn and deliberate adjudication, from which neither exception or appeal can be taken,

has decreed that tobacco is victuals? "Tell it not in Gath, publish not in the streets of Askalon," lest the sons of the Connecticut valley rejoice, and the daughters of Virginia be glad. When the anxious mother asks her foolish son what causes that projection in his thin and sallow cheek, she is met with the truthful answer—"victuals."

When the sacred atmosphere of the church is polluted with the stench that steams up from every smoker's clothes and hair and breath, the lady who is compelled to hold her scented handkerchief to her nose all through the service to keep her stomach in submission, must be reminded that it is only the lingering aroma of a delicate breakfast. Tobacco is victuals.

Clearly this verdict was not influenced by the act complained of ; it was an act of ordinary custom and usual hospitality ; it is in itself exceedingly diminutive and insignificant; and to sustain the motion would do much more harm to the public and damage even to the moving party than could be done by ending the litigation and sustaining the verdict.

*E. B. Sawyer*, for the defendant.

This is not a penal statute, and not therefore subject to the strict rules of construction applicable to such statutes. 4 Am. & Eng. Enc. Law, 643.

The true question is, what was the intention of the legislature? In determining that it is proper to look into the statutes of which this is a re-enactment. An examination of these shows that the vice aimed at was the "*treating*" of jurors by parties. It is immaterial whether the treating is with wine or cigars. Slade's Com. p. 78 ; 1 Am. & Eng. Enc. Law, 385 ; Bou. Law Dict., 347 ; 1 Story Com. Bk. 3, Chap. 6.

Tobacco is both victuals and drink, according to the definitions of Webster, Worcester and the Century Dictionary.

The opinion of the court was delivered by

Thomas J. Baker, Aplt. *v.* Joseph Jacobs.

THOMPSON, J.   In the County Court, the jury returned a verdict for the plaintiff.   Immediately after the verdict was returned the plaintiff directed the deputy sheriff who had had charge of the jury, to get them all together at the American House in Hyde Park, saying that he wanted " to pay the cigars."   Thereupon the deputy sheriff informed some of the jury that the plaintiff was going to treat, and several of the jury soon after met the plaintiff at the American House and were treated by him with cigars furnished and paid for by him.   At the same term the verdict was rendered, the defendant moved to set it aside on account of the plaintiff's having thus furnished several of the jurors with cigars by way of treat.   The facts not being contradicted, the County Court held as a matter of law, and not as a matter of discretion that the case was within R. L. s. 997, and set the verdict aside and granted a new trial, to which holding of the court the plaintiff excepted.

By R. L. s. 997 it is provided that " if a party obtaining a verdict in his favor, shall during the term of the court in which such verdict is obtained, give to any of the jurors in the cause, knowing him to be such, any victuals or drink, or procure the same to be done, by way of treat, either before or after such verdict, on proof thereof being made, the verdict shall be set aside and a new trial granted."   The determination of this case depends upon the construction to be given to this section.   In ascertaining the intent of the legislature in enacting R. L. s. 997, we are aided by the trend of previous legislation on this subject.   The first act relating to it was passed Nov. 1, 1791, and was entitled, " an act to prevent undue influencing of jurors," and was as follows :

" Whereas, the very pernicious practice of treating jurors by parties in litigation before the courts of law within this State, has become prevalent by the party recovering, which tends much to the corruption of the manners of the jurors, and is often subversive of justice by giving an undue bias :

Therefore to prevent such evil practices in the future, it is

hereby enacted by the general assembly of the State of Vermont, that if any person obtaining a verdict in his favor in any court in this State, shall during the session of the said court in which such verdict is obtained, give to any of the jurors in said cause, knowing him or them to be such, any victuals or drink, or procure the same to be done, by way of treat, whether before or after such verdict, on due proof thereof being made, it shall be sufficient reason for arrest of judgment in said cause."

By an act passed March 2, 1797, the provisions of this act of Nov. 1, 1791, were re-enacted in the same words with the exception of the change that such treating, " shall be sufficient reason to set aside the verdict and award a new trial in such cause," (Tolman's Comp. p. 82, s. 71) and this continued to be the law until the enactment of R. L. s. 997, in 1880. We thus see that the constant tendency of our legislation on this subject has been to make the law more stringent against the evil sought to be remedied by the act of Nov. 1, 1791, and more efficient to suppress it. It is contended on the part of the plaintiff that cigars do not come within the meaning of " victuals or drink " as used in R. L. s. 997, and hence the treating of the jury by the plaintiff with cigars is not within the prohibition of the law. We do not deem it necessary to decide whether tobacco falls within the strict meaning of the terms " victuals or drink," as has been ingeniously argued by the defendant's counsel. In construing a statute of this kind, as was said in *Ryegate* v. *Wardsboro*, 30 Vt. 746, we are to " look to the whole and every part of a statute, and the apparent intention derived from the whole, to the subject, to the effects and consequences, and to the reason and spirit of the law, and thus ascertain the true meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the word." In that case the court quoted with approval from an old book the following summary of the rules of construing statutes : " In some cases the letter of an act of parliament is restrained by an equitable construction ; in others it is enlarged ; in others the *construction is contrary to the letter*. In order to

Thomas J. Baker, Aplt. *v.* Joseph Jacobs.

form a right judgment whether a case be within the equity of a statute, it is a good way to suppose the law maker present, and that you have asked him this question: Did you intend to comprehend this case? Then you must give yourself such answer as you imagine he being an upright and reasonable man would have given. If this be, that he did mean to comprehend it, you may safely hold the case to be within the equity of the statutes ; for while you do no more than he would have done, you do not act contrary to the statute, but in conformity thereto." We think the rule thus laid down in *Ryegate* v. *Wardsboro* is the true rule of construction to be adopted in this case. The evil, against which the legislature has sought to guard and has intended to suppress from its earliest enactment on this subject to the present time, has been to prevent jurors from being biased by being treated by a party to the suit before rendering their verdict or by the hope or expectation of being treated after they should render it, and to prevent a suitor from directly or indirectly seeking to influence a verdict in his favor by such means. This has been the policy of our law for a century, and we think the furnishing a juror with a cigar by way of treat is as much within the true intent and spirit of the statute as the treating him with a glass of whiskey. Indeed, among a large class of people, in treating, cigars are now given and received instead of intoxicating liquors. We hold that the treating of the jurors by the plaintiff as stated, was clearly within the provisions of R. L. s. 997, and that as a matter of law the court below was bound to set aside the verdict and grant a new trial.

*Judgment affirmed and cause remanded for a new trial.*

TAFT J. I concur in the result but not for the reason stated. When the act under which we are asked to affirm the judgment was passed in 1791, to drink tobacco was a common phrase. It was used in that sense by the best authors, like Spenser, Dryden, Pope and rare Ben. Johnson. Webster says, to drink is "to absorb" "to take in". Do you not often meet

men who have absorbed and taken in so much tobacco that you can scent them as far as the hound can the fox? According to these definitions they drink it. He says " to smoke as tobacco" is now obsolete, but I do not think it was when the act in question was passed, and in construing a statute have we not the right to use the words thereof in the same sense in which they were used at the time of its enactment. I think we have. In 1620 George Wither wrote a poem on the weed, the refrain of which was

"Thus thinke then drinke tobacco."

From the discovery of the plant until this century the word was used in this sense.

Joaquin Miller says: "I drink the winds as drinking wine." If a man can drink wind I think he can drink tobacco smoke, vile and disgusting as it is. A man is compelled to drink it, by having it puffed in his face, on all occasions and in all places, from the cradle to the grave. It is a drink, and I would set aside the verdict for that reason.