STATE OF IOWA, Appellee, v. B. H. GISH, Appellant.

**STATUTES: Construction—Character of Statute—Related Sections—**
**1** **Implied Meaning Part of Statute.** The intent of a statute is the law. In arriving at that intent, the "character" of the statute must be kept in view; for instance, whether *regulatory* or *prohibitory*. With the real character in mind, that which is necessarily implied or assumed in *related* clauses or sections is as much a part of the law as that which is expressed.

PRINCIPLE APPLIED: Chap. 72, Acts 34 G. A., provides, in effect, that every owner of an automobile shall register his vehicle with and pay to the secretary of state an annual fee, and that such officer shall assign to said vehicle a number, and furnish to the owner a certificate to that effect, and "two number plates." Sections 12 and 22 provide that it shall be a criminal offense to operate said vehicle unless said plates are attached thereto. *Held,* that the character of the statute was purely regulatory and should be so construed that the owner's right to operate his vehicle is not impaired by the inability of the secretary of state to furnish the plates—should be so construed that the duty to

attach the plates, the owner being free from default, is held in abeyance until the secretary of state is able to, and does, furnish the same, said Section 12 manifestly implying and assuming that the secretary of state has already performed his duty.

**STATUTES:** Construction—Absurdity—Legislative Intent. If the literal construction of a statute leads to absurdity, the court will seek a construction consistent with reason, if possible, and presume such to have been the legislative intent.

**CONSTITUTIONAL LAW:** Moot Case. The constitutionality of a section of law not involved in the case at bar will not be considered.

**INDICTMENT:** Allegation of Time—Variance. The precise time of the commission of an offense need not, ordinarily, be proven as alleged, but the record may be such that the state must stand or fall on the precise date alleged.

PRINCIPLE APPLIED: Defendant was accused of having operated an automobile in a certain county, on a certain date, without number plates thereon. Evidence failed to show he had ever operated his vehicle in the county except on the date alleged. *Held,* if he was not guilty of committing an offense on the day alleged, he was not guilty of any offense in said county.

**EVIDENCE:** Operating Automobile Without Plates—Non-Default. In order to show that one charged with operating an automobile without number plates was not in default, the certification of registration of the secretary of state, required by Sec. 1571-m5, Code Supp., 1913, and the cancelled draft in payment of the fee therefor, are admissible.

*Appeal from Hardin District Court.*—HON. CHARLES E. ALBROOK, Judge.

FRIDAY, DECEMBER 18, 1914.

THIS is a criminal prosecution on information charging the defendant with the operation of his automobile upon the public highway without displaying the appropriate number plates thereon. Upon appeal to the district court, and trial had thereunder, the defendant was found guilty and a judg-

ment imposing a fine against him was entered. He appeals,
*Reversed* and *Remanded.*

*George Cosson, Attorney General,* for appellee.

*Wesley Martin,* for appellant.

EVANS, J.—The information charged the defendant with
the violation of Secs. 7, 8, and 12, of Chapter 72 of the
Acts of the 34th General Assembly, in that on May 29, 1913,

1. STATUTES:
construction:
character of
statute: re-
lated sections:
implied mean-
ing part of
statute.

he operated upon the public highway his motor
vehicle, without having displayed thereon
registration numbers, as required by the stat-
ute. That the defendant was operating his
motor vehicle upon the public highway on the
date named and that no number plates for 1913 were displayed
thereon was and is conceded. His denial of guilt was predi-
cated upon his inability to obtain from the secretary of state
his official number plates, he himself having complied with
every prerequisite of the statute to entitle him to such num-
ber plates. He offered evidence tending to prove that more
than one month prior to May 29, he had properly re-regis-
tered his motor vehicle with the secretary of state and had
paid the full fee required therefor; and also tending to show
that the re-registration had in fact been entered by the sec-
retary of state and a 1913 number assigned to the defendant,
and that the re-registration receipt, including the number,
had been received by the defendant; that the defendant failed
to receive his number plates and that such failure was through
no fault on his part. This line of evidence was all rejected
on the ground that the sole question to be tried was whether
the defendant operated his motor vehicle upon the public
highway at the time alleged without displaying the required
number plates. Upon this holding the defendant was neces-
sarily convicted, regardless of the reason for the failure to
display number plates and regardless of the question of his
own default in relation thereto. We are first confronted,

therefore, with the necessity of construing the statute upon which the prosecution is based.

The information charged the violation of sections 7, 8, and 12 of Chapter 72 of the Acts of the 34th General Assembly "and amendments thereto." This chapter was amended by chapter 130 of the Acts of the 35th General Assembly. By this amending chapter, substitutes were enacted in lieu of sections 7 and 8 of the previous statute. Such substitutes, however, made no changes in sections 7 and 8 that bear upon any question involved in this case. For the convenience of this discussion, therefore, we will take no account of the amending Chapter 130, Laws Thirty-fifth General Assembly, and will refer to the sections as numbered in the previous statute. The evidence on the trial disclosed no violation of Secs. 7 and 8. The only offense contended for by the state was the violation of Sec. 12, which is as follows:

"Sec. 12. No person shall operate or drive a motor vehicle on the public highways of this state after the fourth of July, nineteen hundred eleven, unless such vehicle shall have a distinctive number assigned to it by the secretary of state, and two number plates with numbers corresponding to that of the certificate of registration conspicuously displayed, one on the front and one on the rear of such vehicle, each securely fastened so as to prevent the same from swinging."

Section 3 of the act in question puts the duty of initiative upon the owner of a motor vehicle and requires him to register such vehicle with the secretary of state and to furnish certain data in his application for such registration. Sections 7 and 8 provide for the payment of the annual fee to the same officer. Section 5 lays upon the secretary of state the duty to make the registration in a public record and to assign to the vehicle a "distinctive number." Section 6 provides as follows:

"Sec. 6. Upon the filing of such application and the payment of the fee hereinafter provided, the secretary of state

*shall* assign to such motor vehicle a distinctive number and, without expense to the applicant, issue and deliver or forward by mail or express to the owner a certificate of registration, in such form as the Secretary of State shall prescribe, *and two number plates.*"

When the owner has complied on his own part with every requirement of the statute necessary to *entitle him to receive* the number plates from the secretary of state, and he fails to receive the same only because such official is unable to furnish them, is this a lawful excuse for his failure to display such number plates upon his motor vehicle? And in such case, is it a violation of Sec. 12 to operate such vehicle upon the public highway without displaying such number plates?

To put it in another way, what is the gist of the offense defined in such section? Is it the *operation* of the motor vehicle? Or is it the *failure to attach and display the number plates* while operating the vehicle?

It will be noted that Sec. 12, above quoted, in terms prohibits the operation of a motor vehicle upon the public highways "unless such vehicle shall have a distinctive number assigned to it by the secretary of state and two number plates . . . conspicuously displayed, etc." Construing this section alone without regard to any constitutional limitation and without regard to the alternating duties of the owner and the secretary of state as specified in the preceding sections already referred to, it would bear the construction put upon it by the trial court. According to such construction, the operation of the vehicle is absolutely prohibited if number plates cannot be obtained, regardless of any fault on the part of the owner. This construction has its analogy in the construction adopted by us of the statutes relating to the sale of intoxicating liquors and to permits and consents to sell. The reason of such construction of such statutes is that absolute prohibition of the sale of intoxicating liquors is the rule in this state and that

such prohibition is not lifted except by the full performance of the necessary conditions precedent.

These statutes and our construction thereof rest upon the undoubted legislative authority to enact absolute prohibition of the sale of intoxicating liquors. If the legislature has authority to enact absolute prohibition of the use of motor vehicles, it might afford a reason why an analogous construction should be put upon Sec. 12 above quoted as is put upon such statutes relating to sales of intoxicating liquors. But counsel for the state do not . claim so broad a legislative authority. Doubtless no one will contend that the legislature can absolutely prohibit the use of motor vehicles without transcending its constitutional limitations. It may regulate their use; but it can no more prohibit such use than it could prohibit the use of lumber wagons. The right of regulation rests upon its own peculiar ground, and is free from constitutional objection. As a means of such regulation, there may be imposed upon the owner reasonable duties which shall be performed by him as a condition precedent to his use of the vehicle.

Taking the entire legislative act now under consideration, it is manifestly a regulation of the use of motor vehicles and not an attempted prohibition thereof. It ought, therefore, to be construed consistently with its character in that regard. The gist of the violation, therefore, must be not the mere use of the motor vehicle by the owner, but the failure of the owner to perform the statutory duties laid upon him as conditions precedent to its use. In order that the owner may be constitutionally precluded from the use of his vehicle, he must himself be found in default in the performance of some statutory duty imposed upon him as a condition precedent to its use.

Turning now to Secs. 3, 7, and 8 of the act in question, we have already noted that they require a registration, or application for registration, and the payment of the required fee by the owner of the vehicle. Thereupon Secs. 5 and 6 of the act define the duties of the secretary of state in relation to

such registration. These duties include that of forwarding to the owner, without expense, ''two number plates.''

These number plates being furnished, Sec. 12 casts upon the owner the duty to attach them to his vehicle ''conspicuously displayed.'' If, in the case before us, the number plates had been received by the defendant and he had failed to use them in the manner specified, he would be clearly guilty of violating Sec. 12. Assuming, however, as the rejected evidence tended to show, that the secretary of state failed to forward the number plates, manifestly the defendant could not be in default for failure to attach them. He could neither supply them himself nor substitute others for them. Section 12 must be construed in the light of Sec. 6. Section 6 in terms undertakes that number plates shall be furnished to the owner. The mandate of Sec. 12 that such number plates shall be attached to and conspicuously displayed upon the vehicle necessarily rests upon the implication that the requirements of Sec. 6 shall have been first duly performed. Counsel for the state do not contend for any power in the legislature to penalize the owner of a vehicle for failure of the state official to furnish the number plates. Their contention is that he is subject to penalty for using his vehicle before getting the number plates. To put it in another way, that he is subject to penalty for not desisting from the use of his vehicle until he shall receive the number plates, however long the delay. But to compel the owner to desist from the use of his vehicle for an indefinite length of time because of the inability of the official machinery of the state to furnish him the number plates, as contemplated by the statute, would of itself amount to a very practical penalty which might operate more seriously upon him than the maximum fine imposed by the statute. If the legislature is without power to impose upon him a direct penalty for the mere default or failure of another, the statute ought not to be construed so as to impose an indirect penalty upon him under the same circumstances and without any default on his own part. The owner's right to the use of his

vehicle after complying with the statutory duties imposed upon him is a substantial property right. It is common knowledge. that the daily business of thousands of people in the state is dependent upon the daily use of such vehicles. It is a matter of public notoriety, also, that the machinery provided by the state for the furnishing of number plates has sometimes proved inadequate to meet the demands upon it; and that the secretary of state, without fault on his own part, has been unable sometimes to furnish number plates to those entitled to them without long delay. The construction of the statute which is contended for by the state would require many thousands of vehicles to stand unused waiting for some belated factory to perform its broken contract with the secretary of state. These considerations should not be overlooked in ascertaining the legislative intent, because these are conditions which arise naturally out of the practical operation of the law.

It is urged by counsel for the state that if the secretary of state failed to send to defendant his number plates, then such official is himself liable for violation of the statute, and that defendant has his remedy against him for such breath of duty. We see no substantial aid to the prosecution in this suggestion. It may be conceded that under a strict and literal construction of this act the secretary of state would be liable to punishment thereunder for his failure to send the number plates, however helpless he might be to do so. The penal provision of the act is Sec. 22, as follows:

"Sec. 22. The violation of any of the provisions of sections from three to fifteen both inclusive, of this act shall constitute a misdemeanor punishable by a fine not exceeding fifty dollars."

This argument only emphasizes the absurdity of result to which we would be logically led by adopting the construction of the act thus contended for. It is practically inconceivable that the legislature intended to punish a state official

for failing to perform an official act which for the time being was impossible. It is quite as inconceivable that it should intend such failure to result in penalty to a private citizen who was himself helpless either to prevent or to supply such failure.

Assuming, as we must, that the defendant could have proved the facts which his offered evidence tended to prove and that he could have shown himself free from all default in the performance of the precedent duties imposed upon him by the statute, it is repugnant to every sense of justice that he should be punished for his mere inability to obtain from the state the number plates due him. No statute ought to be construed to such a result if it will fairly bear a different construction. The purpose, of course, of statutory construction is to ascertain and declare legislative intent as expressed in the statute. It has often been held, however, that where a literal construction of a statute leads to absurdity or to manifest injustice or oppression, the court will not be bound by literal terms, but will seek a construction consistent with a sense of justice, if possible, and will presume such to have been the intent of the legislature. The following excerpts from some of the cases sufficiently support this proposition:

2. STATUTES: construction: absurdity: legislative intent.

" 'Acts of Parliament are to be construed as no man that is innocent or free from injury or wrong be by a literal construction punished or endangered.' *Margate Pier Co. v. Hannam*, 3 B. & A. 266. 'If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.' *State v. Clark*, 29 N. J. 96. 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. It will always, therefore, be presumed that the Legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter.' *United States v. Kirby*, 74 U. S. 482 (19 L. Ed. 278). 'It is

a familiar rule that a thing may be within the letter of the statute, and yet not within the statute, because not within its spirit nor within the intention of its makers. This is not a substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include the act in question, and yet a consideration of the whole legislation or of the circumstances surrounding its enactment or of the absurd results which follow from giving such broad meaning to the words makes it unreasonable to believe that the Legislature intended to include the particular act.' *Trinity v. United States,* 143 U. S. 457 (12 Sup. Ct. 511, 36 L. Ed. 226). 'A thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers.' *Jackson v. Collins,* 3 Cow. (N. Y.) 89. See also, *Ryegate v. Wardsboro,* 30 Vt. 746; *Murray v. Hobson,* 10 Colo. 66 (13 Pac. 921); *Commonwealth v. Kimball,* 24 Pick. (Mass.) 366; *Whitney v. Whitney,* 14 Mass. 88; *Pierce v. Emery,* 32 N. H. 508; *Austin v. State,* 22 Ind. App. 221 (53 N. E. 481).'' *State v. O'Neil,* 147 Iowa 513, 533.

The manifest purpose of requiring registration and the display of official number plates is (1) to accomplish in advance the collection of the license or registration fee, and (2) to furnish a means of identification of the vehicle.

The pre-eminent purpose, however, of requiring annual re-registration and annual number plates (which is the requirement involved in the case at bar) is to accomplish the collection of the annual fee. Identification is not aided by mere re-registration or by a *change* of numbers or plates.

According to the offered evidence in the case at bar, the re-registration was made; the annual fee was paid. There was no *evasion* of means of identification. On the contrary, the defendant carried on display his 1912 number plates as such. No better means of identification were available. Having responded to the purpose and spirit of the law, and having

performed its letter as to every duty precedent imposed upon him, the defendant is haled for punishment only because the official machinery of the state temporarily failed to perform the impossible task laid upon it.

We reach the conclusion, therefore, that Sec. 12 must be read as pursuant to Sec. 6. If the owner of a motor vehicle is otherwise free from default, his duty to attach and display his number plates as provided in Sec. 12 cannot arise until such number plates due him shall have been furnished by the secretary of state, as required by Sec. 6, and implied by such Sec. 12 as a fact accomplished. This duty imposed upon the owner by Sec. 12 arises out of, and follows after, the performance of the requirements imposed upon the state official by Sec. 6. It is therefore necessarily in abeyance until such antecedent requirement be performed. Any other construction would impose upon him an impossible duty. It is an old legal maxim, applicable to criminal cases especially, that there can be no obligation to perform the impossible; *Impossibilium nulla obligatio est*. For an application of this maxim, see authorities cited in 21 Cyc. 1741. It follows, therefore, that defendant's offered evidence tended to prove that on May 29, 1913, he was not himself in default as to any regulatory condition precedent to his right to use his vehicle. Granted that his use of the vehicle without displaying the number plates was sufficient prima-facie evidence against him as tending to show his default, we hold that he was entitled to show affirmatively as a defense that he had complied with all the requirements of the statute on his own part and had failed to receive his number plates through no fault of his own.

This construction saves the spirit of the act and perhaps its validity. If there is any evasion of the letter of the act, it is only because "the letter killeth," as it is sometimes wont to do.

2. Considerable attention has been devoted by appellant's counsel to the constitutionality of the act as a whole. The

main ground of attack has been upon that feature of the statute which imposes a registration fee in

**3. CONSTITU-TIONAL LAW: moot case.** lieu of all other forms of taxation. The argument is that this adopts a special method of taxation for this particular property and a special method of distribution of the taxes thus collected, so as to deprive certain municipalities from all benefits of such taxation. The objectionable features of the statute in this regard are all contained in Sec. 9. This section provides for the cancellation of all assessments of motor vehicles upon the assessors' books, and provides for an exemption from all taxation except the registration fee. If appellant's contention were sustained in this regard, it would avail him nothing in this case. Our pronouncement, therefore, would be mere dictum. The statute in question involves not only the taxing power, but the police power of regulation as well. If we were to strike down Sec. 9, which section alone involves the exercise of the taxing power, it would still leave the remainder of the act quite intact and independent and involving only an exercise of the police power. That a reasonable fee may be imposed as an incident to the exercise of the police power of regulation is too well settled to require citation of authorities. *Standard Stock Food Company v. Wright,* 225 U. S. 540; *Engel v. O'Malley,* 219 U. S. 128; *St. Louis v. Williams,* 235 Mo. 503; 139 S. W. 340.

Appellant does not assail the registration fee as being excessive. His own position is that he paid it and without protest. To strike out Sec. 9, therefore, would open no door of escape to the defendant, but on the contrary would subject his motor vehicle to assessment and taxation by the regular taxing officials.

3. The dissenting opinion filed herewith renders it necessary that a few further facts be detailed. The emphasis of the dissent seems to be put upon the suggestion that the date

**4. INDICTMENT: allegation of time: variance.** of the offense as alleged in the information, viz., May 29, 1913, was not material and that the defendant might have been found guilty for violation of the statute as of April 26, 1913. The defendant

himself testified: "I didn't start using my machine until the twenty-sixth day of April." Granting the foregoing to be sufficient to permit the affirmative inference that the defendant did use his vehicle on that date, there was no claim in the trial below that the state was entitled to a conviction for such offense, nor would the evidence in the record before us sustain a conviction as for an offense committed on any other date than May 29, 1913.

The defendant was arrested at Iowa Falls in Hardin County on the evening of May 29, 1913, under an information charging him with the violation of the statute on such date in Hardin County. He was convicted before a justice of the peace and appealed to the Hardin District Court. The defendant was not a resident of Hardin County. He was a resident of Blairsburg in Hamilton County. On May 29, he came in his vehicle to Iowa Falls to attend a funeral. While there he was arrested, as already indicated. There is no suggestion of evidence in the record that the defendant had ever operated his vehicle in Hardin County prior to that date. If he was not guilty of committing the offense on May 29, then, under the evidence, he was not guilty of any offense at any time within the jurisdiction of the Hardin County courts. If it were true, therefore, that he had operated his vehicle on April 26 in his home county while he was in default in the payment of his annual registration fee, this would not justify his conviction in Hardin County under this information.

The significance of these dates is that the defendant offered to prove that on April 26, 1913, he remitted to the secretary of state the full registration fee of $12.96 by bank draft drawn to the order of the secretary of state. The cancelled draft bearing such date was offered in evidence and was ruled out on the objection of the state. The defendant also offered in evidence the receipt of the secretary of state for such fee, such receipt being as follows:

5. EVIDENCE: operating automobile without plates: non-default.

"State of Iowa, Department of State, W. S. Allen, Sec-
retary.    C. G. Watkins, Deputy.    R. S. Hayward, Chief
Deputy.    Motor Vehicle Department.    Certificate No. 52607.
Fee Paid, $12.96.

"Des Moines, Iowa, May 27, 1913.    This is to certify that
B. H. Gish of Blairsburg, Iowa, has registered an Automobile
described in application on file in this department and has
paid the fee required by law for the period ending December
31, 1913.

"W. S. Allen, Secretary of State.

"By K.

"Number assigned 52607."

The state objected to this evidence on the ground that
"the sole and only question being tried in this case is the
question whether the defendant operated a motor vehicle on
the public highway of this state on May 29, 1913, without it
having on a registration plate for the year 1913, and for the
reason that Exhibit 'B' is incompetent and immaterial."

The question was thus squarely presented whether it was
open to the defendant to prove that he was free from default
on his own part in that he had complied with all the require-
ments of the statute on his part within such time as to have
entitled him to the receipt of the number plates from the state
official prior to May 29, the date of his arrest in Hardin
County.    The adverse ruling closed this door.    We hold that
such fact, if proved, was available to him and that the prof-
fered evidence should have been received.

Whether the defendant was necessarily in default prior
to April 26, by his failure to pay the registration fee prior to
such date and while his vehicle was not in operation, is a
question not material to our present consideration.    He
terminated such default, if any, by payment on such date.
Previous default would not render him a permanent outlaw.
Even though in default, he was under continued obligation
to pay.    By performing his obligation on that date, he dis-

charged it in full. He became thereby entitled to his number plates within a reasonable time and in the ordinary course of mail or express.

We shall not be swift to find any obstacle at any time to the diligent enforcement of the statute under consideration. It goes without saying that every person liable thereunder for registration fees should be required to pay the same and should be punished for operating a car without such payment. Where a defendant is found guilty in a prosecution under this statute, it is provided that judgment shall be entered against him not only for the fine imposed, but also for the amount of the registration fee due from him. The amount of such registration fee thus collected is to be thereupon remitted to the secretary of state. This proviso of the statute rests upon the assumption that failure to pay the registration fee may be deemed as of the very gist of the offense charged thereunder. However, to punish an owner for alleged violation of this statute when his money has lain for weeks in the office of the secretary of state and while he himself has fully performed every act which the statute requires or permits him to do as a condition precedent to the receipt of his number plates, is not an enforcement of the statute in any just sense. To enter judgment against him for a registration fee which had already been receipted for by the secretary of state would be mere travesty.

We hold, therefore, as already indicated, (1) That where the owner of a motor vehicle has fully complied with all the requirements of Secs. 3, 7, and 8 of the statute so as to entitle him to receive number plates from the secretary of state as provided by Sec. 6, and where he fails to receive his number plates within a reasonable time through no default of his own, then he is not guilty of violation of the statute by a mere failure to attach such number plates. In such case, the duty to attach the plates as required by Sec. 12 can only arise after the requirements of Sec. 6 shall have been performed by the secretary of state. In such case, also, the failure of the

secretary of state to comply with the requirements of Sec. 6 cannot operate as a bar against the operation of the vehicle by the owner.

(2) That the proffered evidence rejected by the court below was competent and material in support of the defense herein considered, and it should have been received.

. The judgment below is therefore reversed.—*Reversed* and *Remanded.*

LADD, C. J., WEAVER, PRESTON, GAYNOR and WITHROW, JJ., concur. DEEMER, J., dissenting.

. DEEMER, J.—(Dissenting). The majority have, in my opinion, made the case turn upon a proposition not contended for in argument, and one not fairly arising on the record. As I understand the printed record it shows that defendant purchased and began using his automobile in the year 1911. He paid his taxes thereon for that year, and also for the year 1912; but did nothing toward paying his taxes and securing his number plates for the year 1913 until April 26, of that year. Appellant told at least two witnesses that he had been running his car during the whole of the year 1913, down to the time of his arrest on May 29th, with no other than his 1912 number plates on. Defendant himself admitted on the witness stand that he started using his machine with the 1912 number plates on, on April 26, 1913, which was the very day he sent his money to the secretary of state, without giving the state officials any time to accept the amount sent, to send the official receipt, or the number plates for 1913.

It is true that the secretary of state did not send an official receipt until May 27, 1913, and there is no showing as to when it reached the defendant. It is also true that defendant was arrested on May 29th and that the information filed against him alleged his violation of the law as on May 29, 1913.

The statute upon which the charge was based is both a revenue measure and a police regulation. Unless it be so construed, it is, in my opinion, unconstitutional; for construed

as a police regulation the fee charged is so large as to wholly defeat the law. So far as material, it reads as follows:

"Sec. 3. Every owner of a motor vehicle which shall be operated or driven upon the public highways of this state shall, except as herein otherwise expressly provided, cause to be filed in the office of the secretary of state, a verified application for registration on a blank to be furnished by the secretary of state for that purpose, containing: (a) a brief description of the motor vehicle to be registered, including the name of the manufacturer and factory number of such vehicle, the character and, if the motive power be derived from the products of petroleum, the amount of the motive power stated in figures of horse power in accordance with the rating established by the Association of Licensed Automobile Manufacturers, and the number of cylinders, bore and stroke of each; (b) the name and post-office address with street number if in a city, including county and business address of the owner of such motor vehicle.

"Sec. 5. Upon receipt of an application for registration of a motor vehicle, as provided in this act, the secretary of state shall file such application in his office and register such motor vehicle with the name, post-office address and business address of the owner, manufacturer or dealer, as the case may be together with the facts stated in such application, in a book or index to be kept for the purpose, under the distinctive number assigned to such motor vehicles by the secretary of state, which book or index shall be open to public inspection during reasonable business hours.

"Upon the filing of such application and the payment of the fee hereinafter provided, the secretary of state shall assign to such motor vehicle a distinctive number, and without expense to the applicant, issue and deliver or forward by mail or express to the owner a certificate of registration, in such form as the secretary of state shall prescribe, and two number plates. In the event of the loss, mutilation or destruction of

any number plate, the owner of a registered motor vehicle, or manufacturer or dealer, as the case may be, may obtain from the secretary of state a duplicate thereof upon filing in the office of the secretary of state an affidavit showing such facts and the payment of a fee of one dollar; duplicate certificates of registration may be issued by the secretary of state, in like cases, without the payment of any fee therefor.

"Registration shall be renewed annually in the same manner and upon the payment of the annual fee as provided in section eight (8) for registration, to take effect on the first day of January in each year; provided, that the secretary of state shall withhold the re-registration of any motor vehicle the owner of which shall have failed to register the same for any previous period or periods for which it appears that registration should have been made, until the fee for such previous period or periods shall be paid. All certificates of registration issued under the provisions of this act shall expire on the last day of the calendar year in which they were issued.

"The following fee shall be paid to the secretary of state upon the registration or re-registration of a motor vehicle in accordance with the provisions of this act; eight dollars ($8.00) upon the registration of a motor vehicle having a rating of twenty (20) horse power or less; and for each such vehicle which shall exceed twenty (20) horse power in rating, the owner shall pay at the rate of forty (40) cents per horse power; provided, that if a motor vehicle shall have been licensed for four separate successive years under the laws of this state, and for which there shall have been paid four registration fees as provided by statute therefor, or any motor vehicle which shall have been in use for a period of not less than four years prior to August first of such registration period for which registration is about to be made, the annual registration fee thereafter shall be one-half that amount; and further provided, that the annual fee for the registration or re-registration of any electric or steam motor vehicle in accordance with the provisions of this act shall be fifteen ($15.00)

dollars; . . . and provided further, that the fee for registering any theretofore unregistered motor vehicle under the provisions of this act, which motor vehicle shall be purchased on or after August first of any year, shall be one-half of the annual fee therefor, for the remainder of that calendar year; and provided further, that each manufacturer or dealer selling or otherwise disposing of motor vehicles, theretofore unregistered in this state, to residents of this state shall report to the secretary of state each such sale made on or after August first of each calendar year; such reports shall be made on blanks to be furnished by the secretary of state upon request, and shall be made in such manner as he may direct; and provided further, that no motor vehicle shall be registered for less than the annual fee because of its having been purchased on or after September first until such manufacturer's or dealer's report shall have been filed as herein provided.

"The registration fees imposed by this act upon motor vehicles, other than those of manufacturers and dealers, shall be in lieu of all taxes, general or local, to which motor vehicles may be subject. It shall be the duty of the county auditor of each county to cancel all assessments entered upon the assessor's books against automobiles for 1911, and no assessments upon automobiles, as made by assessors for 1911, shall be carried upon the tax lists.

"Upon the sale or transfer of a motor vehicle registered in accordance with the provisions of this act, the vendor shall immediately give notice thereof with his name, post-office address and registration number, and the name and address of the vendee, to the secretary of state, and the vendee shall, within ten days after the date of such sale or transfer, notify the secretary of state thereof upon a blank furnished promptly by him for that purpose, stating the name, post-office address, and business address of the previous owner, the number under which such motor vehicle is registered, and the name, post-office address, with street number if in a city, including county and business address, of the vendee. Upon filing such state-

ment duly verified such vendee shall pay to the secretary of state a fee of one dollar, and upon receipt of such statement and fee the secretary of state shall file such statement in his office and note upon the registration book or index such change in ownership.

"Upon the sale of a motor vehicle by a manufacturer or dealer, the vendee shall at once make application by mail or otherwise for registration thereof, after which he may operate the same upon the public highways without its individual number plates thereon for a period of not more than fifteen (15) days, providing that during such period the motor vehicle shall have attached thereto, in accordance with the provisions hereof, metal number plates to be furnished by the secretary of state to the dealer as provided in Sec. 15 bearing the registration number of the manufacturer or dealer under which it might previously have been operated for demonstration purposes; and provided further, that no manufacturer or dealer shall permit the use of his demonstration or registration number by such vendee until application for registration be so made as aforesaid, and it shall be his duty to assist the vendee in making out and filing his said application for registration, and for that purpose to keep on hand a supply of blanks to be furnished by the secretary of state upon request.

"No person shall operate or drive a motor vehicle on the public highways of this state after the fourth of July, nineteen hundred eleven, unless such vehicle shall have a distinctive number assigned to it by the secretary of state, and two number plates with numbers corresponding to that of the certificate of registration conspicuously displayed, one on the front and one on the rear of such vehicle, each securely fastened so as to prevent the same from swinging.

"Registration provided for in section fifteen (15) shall be renewed annually in the same manner and on the payment of the same fee as provided in section fifteen (15) for original registrations, such renewal to take effect on the first day of January of each year. The provisions of section seven (7)

relating to renewals and duration of renewals under this act shall apply to registrations and re-registrations under this section. Within sixty (60) days after the first of January annually, the secretary of state shall prepare and forward to the county attorney of each county a list of the owners of motor vehicles in said county, who may have failed or neglected to pay the registration fee required by this act, whereupon the county attorney shall immediately proceed to enforce the provisions of this act, as herein provided.

"The violation of any of the provisions of sections from three to fifteen, both inclusive, of this act shall constitute a misdemeanor punishable by a fine not exceeding fifty dollars; provided, that on conviction for a violation of sections eight and twelve hereof, or either of them, in case such motor vehicle shall not have been registered as required by this act, the court shall enter judgment against and collect from the person or persons so convicted, in addition to the penalty hereinabove provided, such sum as may be sufficient to pay the proper registration fee for said motor vehicle so unlawfully driven or operated, and forward such fee to the secretary of state at once, for the proper registration of such motor vehicle." (Acts Thirty-fourth General Assembly, Ch. 72, as amended by Acts Thirty-fifth General Assembly, Ch. 130.)

Provisions are also made for the suspension and revocation of the privilege granted under these and other sections, and penalties are imposed for the violation of other provisions of this act. The sections quoted, with others for the distribution of the funds, clearly indicate that this is a revenue measure, as well as a police regulation, and that the fiscal year begins on the first day of January. As I read the law, if one was the owner of an automobile on the 31st day of December, 1912, it was his duty on or before that day to send in his application, especially if he expected to operate his machine during the coming year, 1913. The tax was due January 1st, and became delinquent not later than sixty days after that

time; for at the expiration of the sixty days after January 1st, the secretary of state was required to send a list of all automobile owners who had not paid their license (or tax) to the county attorneys of the respective counties, which attorneys are required to enforce the provisions of the act.

Although not in my opinion necessary to a proper decision of this case, I am disposed to think that this tax may be collected by the county attorney after the expiration of the sixty days, from every owner of an automobile on January 1st of each year, although he may not expect to use his machine that year at all. Automobiles are not exempted from taxation either by this act or any other. A specific tax is fixed in lieu of all others, and this tax is collected by a different administrative body and distributed in a different manner from other taxes on personal property; but it is none the less a tax, and the tax is not, I think, imposed on the use of the machine but on the ownership thereof. All personal property should bear its just proportion of the taxes, whether used or not, and I do not see any evidence of an intent on the part of the legislature to exempt automobiles which remain inactive for any portion or the whole of a year, from the burdens of taxation. If such be the intent, then one owning a machine on the first day of January may permit it to remain idle until after July first, and then make his application and pay but one-half the tax, although he had been the owner of the machine for the entire year. Moreover, he may buy a machine after July first, and if he does not run it during the remainder of the season, he is exempt from all taxes during the remainder of that year.

If the taxing feature is upon the operation rather than on the ownership of the machine, what becomes of Sec. 16 of the act, requiring the county attorney to collect taxes from the owners of automobiles in his county who have not complied with the provisions of the act? It seems to me, further, that automobiles are only exempt from the general tax in the event the owners pay the taxes imposed under the new law, or, speaking more accurately, that these taxes are in lieu of all

others.   The greater part of the money collected is redistributed to the counties, and is used as a tax and it seems to me that this tax is and must be collectible in some manner, and doubtless by an action at law against the party in default. When the tax is once paid, the machine may be registered by a purchaser from the owner during the fiscal year at an expense of but one dollar, and it is incumbent upon the vendor to give notice of his sale or transfer.   However, I do not, as already stated, regard this as a controlling feature of the case.

As to the police features of the case, the provision as to display of number plates, with the annual change in color, it seems to me that this is not only for the purpose of identifying the owner, but also a method whereby the local taxing officials may know that the owner has paid his tax. Why the change in color of the plate each year save as a means of enforcing the payment of the tax?

It is said that the defendant did all that was required of him, and that he was therefore entitled to run his machine, after sending a draft to the secretary of state, although he had not received his number plates, and was operating in plain violation of the statute.   The reasons given for this conclusion are that any other construction of the statutes would make them absurd, and also because it required of defendant the performance of the impossible.   The majority uphold the constitutionality of the law in all its particulars, and the defendant escapes punishment for the sole and only reason that he was not in default; that he had done everything required of him, and that the blame was wholly with the secretary of state, or with some of the employees in that office.

It is conceded that the defendant did not pay his tax, or offer to do so, until April 26th; that he commenced running his machine on the very day he sent his draft to the secretary of state; and that he did not have the 1913 number plates on his machine as required by law, at any time prior to his arrest on May 29th.

Under these concessions, to say nothing of admissions

made by the defendant, which were undenied, that he had been operating his machine during the whole of the year 1913, down to May 29th, with none but his 1912 number plates displayed, I think he was clearly guilty of the offense charged against him, and that we should not search for some method of escape for him.   Under no construction of the law would he be permitted to operate his machine from the day he sent his draft to the secretary of state.   The latter official would have a reasonable time to acknowledge the receipt, assign the number, and send number plates, and during this reasonable time, which would necessarily be dependent upon the circumstances of the office and other things indicative of the reasonableness of the delay, the defendant would not be justified in operating his machine in violation of the statute.

Impossibility of performance is quite as available to the secretary of state as to the defendant, and just as much an excuse for him.   Indeed I doubt if there is any question of impossibility of performance in the case.   It was quite possible for defendant to have ceased operating his machine until the law was complied with.   He did not have to operate his machine at all, much less to operate it without the required number plates.   Had he kept his machine in the barn or garage he would not have been arrested for violation of the police feature of this act.   He chose to take his chances on violating it, and the most that can be said of his case is that he is compelled to rely upon the default of another as an excuse for his act.   This I do not think he is legally entitled to do.

The statute is not absurd even if it be construed as the state contends it should be.   It may be burdensome; but that is no reason for setting aside a valid police regulation.   All police regulations are more or less burdensome, and interfere with what some men think is their personal liberty, but this is no reason for setting them aside or declaring them invalid. Police regulations are for the common good, and although burdensome on the individual, the greater good to all is deemed paramount to individual convenience.   Better allow these

dangerous machines to remain in their stables for a time, even if the secretary of state be somewhat negligent, than to endanger life and property.

It is said the old number would sufficiently identify the defendant. If so, why require a change of number and a change of color each year? To such identification it would be necessary for one desirous of identification to notice not only the number, but the color or shape of the plate or perhaps both, and this although the night might be dark and the color obscured by dust. At any rate, the law prescribed what the identification plates shall be for each year, and the owner or driver has no power to substitute another, even though it might be his name and address in large letters or figures, conspicuously painted or displayed. The doctrine of impossibility is not in the case, and the statute is not unreasonable in its terms.

The secretary of state is not relieved of liability to one injured in any way for the non-performance of his duties, and he cannot, in my opinion, either by action or inaction, intentional or unintentional, relieve another from his duty to observe a proper police regulation of the state.

But aside from all of this, and as completely answering, to my mind, every claim made for and on behalf of the defendant, whether in argument of his counsel or otherwise, is the fact, conceded of record, that defendant himself was at all times at fault, and therefore in no position to take advantage of any delay, if there was any, on the part of the secretary of state. His re-registration was due not later than January 1st, 1913, and he did not make application until April 26th. His taxes were delinquent, under the old law, thirty days after January 1st, and under the new, sixty days after January 1st. His name, if the secretary of state did his duty, was in the hands of the county attorney on February 1, 1913, and the county attorney should have proceeded to collect his tax or require re-registration at once. Giving the defendant even the sixty days of grace, to wit, until March 1, 1913, he did not

do anything until April 26th, which was nearly two months after the taxes should have been apportioned by the secretary of state and sent to the county treasurers of the several counties. Giving the defendant the benefit of every doubt, it does not appear, nor did he offer to prove, that had he made timely application he would not have received his number plates by the time he desired, as he says, to run his car. Had he complied with the law on his part, it is entirely problematical, so far as this record is concerned, whether he would have received his official receipt and number plates within time to answer his purposes or not. Being a long time in default himself, he is not, in my judgment, entitled to now rely upon what he claims was the subsequent default of another. It was easy for defendant to comply with the law as to re-registration. He did not do so, and it is a familiar principle of law that one cannot profit from his own wrong or complain of the neglect of another when he himself is also in default.

What exceptions might be made by judicial construction to the rule of the statute were the defendant himself not in default, there is no occasion now to decide, and indeed I think we should not decide it until a proper case arises. According to defendant's own admission, he was guilty of a violation of the law, because he commenced running his machine on the day he sent his draft to the secretary of state, without waiting to know whether it would be accepted or not. In such circumstances, particularly where, as here, he was himself in default, for many weeks if not months, I do not feel that we should set aside a statute by introducing questionable exceptions to the rules therein provided for the general good of all.

It is an old maxim, and a true one, that "hard cases are likely to make bad laws," but to my mind this is not a hard case. It is one arising solely, so far as this record is concerned, out of defendant's own default. It is entirely probable that had defendant made his application in time, it would have received prompt attention; and not a violent presumption to indulge that there was an adequate force in the office of the

secretary of state from January down to the time these matters were turned over to the county attorneys, to have reasonably taken care of all applications. Surely there is no proof to the contrary, and every presumption is indulged in favor of the acts of a public official.

Moreover, after these matters are turned over to the county attorneys there is an implication, at least, that they are to collect the taxes or re-registration fees (doubtless with some compensation for their work) and if money is thereafter sent to the secretary of state, he would of necessity have to be given time to investigate and to take the matter up with the county attorney interested, if for no other reason than to adjust his compensation. Again, we may well assume that after these matters are turned over to the county attorneys the office force in the automobile department of the secretary's office might be materially decreased. All of these things should, under any theory, be given weight; but according to the majority opinion, as I understand it, defendant practically goes acquit, because he was not required to do the impossible, that is, to run his automobile according to law.

As already indicated, I would not be so much concerned over the rule announced by the majority were it not for the fact that, so far as this record shows, the defendant himself brought about the very things of which he complains; was himself in default without any shadow of excuse, and persisted in running his machine contrary to a valid police regulation of the state. I would affirm the judgment on defendant's own statement of the facts.