.FORT LEE TRANSPORTATION COMPANY, complainant-appellee,

*v.*

BOROUGH OF EDGEWATER, defendant-appellant.

[Argued February term, 1926.   Decided May 17, 1926.]

1. Where the statutes provide that a motor bus, commonly called a jitney, cannot be operated wholly or partly along any street in a city until the owner or owners thereof shall obtain the consent of the board or body having control of public streets, and also provide that the municipality shall have power to make, enforce, amend or repeal ordinances to license and regulate auto buses commonly called jitneys, and the owners and drivers of all such vehicles, and to fix fees for such licenses, and to prohibit the operation of all such vehicles in the public streets or places of such municipality, unless such ordinances are complied with, whether such auto buses, commonly called jitneys, are operated over routes wholly or partly within the limits of such municipality, and the municipality passed an ordinance prohibiting the operation of jitneys on its streets unless the owner or lessee shall have procured a license for the purpose, and paid the necessary fee therefor, an organization called a "club," whose object was to obtain facilities for a better means of transportation for residents and employes of concerns doing business in the municipality, and to finance the plan each member should pay ten cents per month for dues, and a tax of ninety cents a week for twelve rides a week, the tax to be used as compensation for a common carrier for hiring two buses which were to be operated from outside the municipality to a terminus in the municipality, and to stop nowhere else in the municipality, such buses or jitneys are subject to the terms of the ordinances of the municipality, and cannot lawfully be operated without complying' with the provisions of the ordinance.

2. Making use of the public highways in a borough as a *via media* to reach the prescribed destination is sufficient to justify the claim of operation within the limits of the borough.

On appeal from an order of the court of chancery.

*Messrs. Wright, Vanderburgh & McCarthy,* for the defendant-appellant.

*Mr. George L. Record,* for the complainant-appellee.

The opinion of the court was delivered by

MINTURN, J.

When it became manifest that the automobile had superseded the horse as the motive power in the community, and that such vehicles were increasing not only in popular favor, but as necessary instrumentalities of trade and business, the states quite generally realized the necessity for reasonable regulations in the interest of the safety and lives of the people, as well as in view of the vast financial outlays, which annually were required to maintain the highways upon which such vehicles operated, and under this conception of public necessity and expediency, the Motor Vehicle act was passed, vesting the power of regulation and administration in a motor vehicle inspector. This was followed by the so-called Kates act (*P. L. 1916 ch. 136*), which prescribed the method of operation of motor buses, commonly called jitneys, "wholly or partly along any street," in cities. Under its provisions no such vehicle can be operated "until the owner or owners thereof shall obtain the consent of the board or body having control of public streets." Subsequently, the necessity for extending the beneficence of this legislation to all municipalities was made apparent, and chapter 89 of the laws of 1920 was enacted, which extended to every municipality the power "to make, enforce, amend or repeal ordinances to license and regulate auto buses commonly called jitneys, and the owners and drivers of all such vehicles, and to fix the fees for such licenses, and to prohibit the operation of all such vehicles in the public streets or places of such municipality, unless such ordinances are complied with, whether such auto buses, commonly called jitneys, are operated over routes wholly or partly within the territorial limits of such municipality."

In pursuance of this legislation, the borough of Edgewater passed an ordinance on May 2d, 1922, providing, *inter alia,* that no auto bus or buses commonly called jitneys shall be operated in any of the public streets or places in the borough

of Edgewater, "unless the owner or lessee shall have procured a license for the purpose, and paid the necessary fee therefor." The application for a license, after due consideration, at the next meeting of the borough council, may be granted with or without modifications, if, in the judgment of the council, "it is proper for the good government, order and protection of persons and property, and for the preservation of the public health and safety of the borough of Edgewater and its inhabitants."

Among the conditions to be complied with by the petitioner, as a condition precedent to the granting of the license, is the filing of an agreement to comply with the requirements of the ordinance, and its supplements and amendments, and the filing of an insurance policy by a duly-authorized company in the sum of $5,000, insuring the owner against losses sustained by him by reason of operation. There shall also be filed with the clerk, a power of attorney, thereby constituting him the attorney in fact for the purpose of service of judicial process, in any action against the owner of the bus, as well as a schedule showing "the regular stopping places for taking on and letting off passengers within the borough, and the time when such bus or buses will arrive at such stopping points, a statement of the route to be traveled, and a schedule showing the time of leaving their respective termini." Other details and requirements controlling the *modus operandi* of the vehicles within the borough are prescribed in various sections of the ordinance, having for their ultimate purpose the safety, comfort and convenience of the public against unrestricted and unregulated automobile traffic upon the streets of the borough.

At this juncture an organization was conceived and formed known as the "West Fort Lee Workers' Club," the object of which, as expressed in its minutes, was "to obtain facilities for a better means of transportation for residents and employes of concerns doing business in the borough of Fort Lee." To finance the plan it was determined that each member should pay ten cents per month for dues, and to sustain a tax of ninety cents a week for twelve rides a week, one ticket

being used for each fare, the tax to be used as compensation for the hiring of two buses from the complainant, which were to be operated between West Fort Lee, over a road in Edgewater, to a point near the shore front of the Hudson river, in that borough, where the passengers were to be discharged, upon complainant's property, near the Edgewater ferry.

These buses were to operate between five-thirty A. M. to eight P. M., covering what is generally termed the business or rush hours. This service was declared to be for members only, as well as for their families, and the vehicles were to stop nowhere within the borders of the borough to take on or let off passengers, excepting at the terminus near the ferry. Each member, at an early session, by resolution, was entreated to bring in at least two new members. By-laws were adopted which extended the scope of membership from the units of the borough to "any person residing or being employed in Bergen county," who, upon payment of the weekly dues and the tax of ninety cents a week, shall be entitled "to twelve rides a week on any conveyance which the club may contract for, for their transportation."

The Fort Lee Transportation Company confirmed this working arrangement, and the complainant thereafter proceeded to operate under it, without taking out a license therefor in accordance with the provisions of the borough ordinances. While so operating, the buses were stopped, the drivers arrested and convicted before the recorder of the borough for violating the provisions of the ordinance, in failing to take out a license. This bill was thereafter filed to enjoin the borough from interfering with the operation of the buses, and an injunction to that effect was ordered by the learned vice-chancellor, and from that determination this appeal has been taken.

Learned counsel for the complainant, in his brief, narrows the issue involved to the simple inquiry, "whether the said buses come under the provisions of the borough ordinances," and insists that the buses are not jitneys as defined in the ordinance, because they do not transact a jitney business in Edgewater, or, as he contends, "anywhere." *In*

*limine,* therefore, it becomes important as in a logical syllogism, to accurately define the verbal terms, and to assist in so doing it may be helpful to inquire what the particular nature, character and cognomen of complainant's business may be, in order to distinguish it from the legislative definition of an auto bus, *i. e.,* "any automobile or motor bus, commonly called jitney, engaged in the business of carrying passengers for hire." *P. L. 1916 ch. 136.* Generically speaking, similar definitions of a jitney are accepted by lexicographers, *i. e.,* "a motor vehicle that carries passengers for a small fare." *Funk & Wagnalls, 623.*

That this complainant is comprehended within the definition must be obvious, if we apply the equitable consideration that the substance of the thing and not the mere color or form which it assumes or invokes, for the manifest purpose of evading regulation, must be kept conspicuously in view.

So impressed was the learned vice-chancellor with the artificial character of the "club" device that he declared: "I am inclined to the belief that the organization of a 'club' is merely for the purpose of defeating the application of the borough ordinance," thus furnishing, one might say, a sufficiently cogent basis for declaring the complainant a joint adventurer in an enterprise avowedly designed to transgress the law, in which light it cannot be said to possess hands entirely immaculate.

The baneful effect of such a system of boycotting, if indulged by the community constituting the county, according to occupations, professions and trades, must necessarily lead to the practical abolition of all reasonable fiscal regulations, in the interest of order and economy; and an order or trade councils or clubs claiming exemption from the law may thus be logically operated as *imperium in imperio,* and, in effect, constituted as a substitute for local self-government.

It can make no reasonable difference in legislative contemplation whether the transportation factor which operates these buses be an individual or a club; whether the fares be collected by an intermediary called a club, which eventually delivers them to the carrier, or whether the latter collects

them *per capita* en route from the passengers. In any event the vehicles are operated for hire upon the public street, and, *ipso facto,* become subject to the regulatory provisions of the law. Regulation and control in operation over the roads of the municipalities, manifestly, was the legislative conception of its delegation of power to the local municipal bodies, and that purpose can be subserved only by the reasonable exercise of the licensing power thus conferred, whether the operating factor be an ordinary jitney motor bus, collecting fares at intervals within the borough, or a motor club, collecting fares in bulk outside the borough. In any event, making use of the public highways as *via media* to reach the prescribed destination is sufficient to justify the claim of operation within the limits of the borough.

The supreme court in the *City of Bridgeton,* v. *Zellers, 124 Atl. Rep. 520,* affirmed by this court in *127 Atl. Rep. 924,* in passing upon the contention that the bus operator took on no passengers within the borough in its through transit, characterized the argument as frivolous; and while the contention may possess some force as against an attempt to collect a tax for revenue purposes, from a duly licensed carrier, passing through the borough from an adjoining municipality to a designated terminus in another municipality, it can have no application as against mere local regulatory legislation, based upon a specific delegation of the police power for the purpose. *Cary* v. *North Plainfield, 49 N. J. Law 111; North Hudson Co.* v. *Hoboken, 41 N. J. Law 71.*

These subjects have been considered *in extenso,* because the briefs thus deal with them, but, while treated incidentally, they are not made *ratio decidendi* in the opinion of the learned vice-chancellor, who bases his disposition of the cause entirely upon the question of want of "operation" entirely within the borough, so that he declares "it does not seem that it was intended that a license should be required to permit a bus to use the public streets for transportation from a point without the municipality to private property within the same where no unusual servitude was imposed upon the public way."

The difficulty in accepting this reasoning arises, primarily, from the fact that the legislature has expressly declared its purpose to delegate the power of regulation in any event to the municipality. Thus, in the act of 1916, page 283, the first section of the act defining jitney buses, provides for the acceptance of passengers "either at the termini" or at points along the route, and in the next section inhibits the operation of such bus upon the public streets whether such bus be operated "wholly or partly" within the city, until a license shall have been duly procured. This legislation was followed by the laws of 1920, page 182, which, obviously, was intended to extend to all municipalities the powers and provisions of the act of 1916, which were expressly limited to cities, and therein it is prescribed that the provisions of such ordinances shall be applicable to such vehicles, "whether such auto buses, commonly called jitneys, are operated over routes wholly or partly within the territorial limits of such municipality."

To emphasize this construction, as it were, the present legislature enacted chapters 144 and 146 of the laws of 1926, which leave no doubt as to the legislative intent.

Manifestly, therefore, if this species of transportation may be denominated a "servitude" upon the highway, the legislature has expressly recognized and prescribed its *modus operandi,* and in the public interest has delegated to the municipality the power to circumscribe and license its use.

The decree appealed from will therefore be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, WHITE, GARDNER, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 14.