Argued June 29, affirmed July 13, argued on rehearing October 5, rehearing denied October 19, affirmed on rehearing October 19, 1926.

# PURPLE TRUCK GARAGE CO. et al. *v.* THOMAS K. CAMPBELL et al.

## (250 Pac. 213.)

**Injunction.**

1. Injunction lies to prevent threatened enforcement by prosecuting officers of void statute, which will affect property rights of party.

**Constitutional Law.**

2. In ascertaining judicial value of statute, it is necessary to consider not what actually has been done under it, but what it authorizes and permits to be done.

**Highways—Though Legislature has Control of Highways, It cannot Make Otherwise Proper Use of Them Depend on Compulsion of User Unwillingly to Become Common Carrier.**

3. On basis of reasonable classification in exercise of police power, legislature may regulate use of highways and forbid use of them for some purposes, but cannot lawfully make otherwise proper use depend on compulsion of user unwillingly to become common carrier.

**Carriers—Persons Engaged in Carrying Goods on Highways for Hire, but not for General Public, are not Subject to Statute Giving Public Service Commission Control Over Transportation for Compensation, Over Public Highways (Laws, Sp. Sess. of 1921, p. 35).**

4. Persons or corporations engaged in transporting merchandise for others for hire, over public highways, but not for general public, whether considered as common carriers or not, are not subject to control of Public Service Commission, under Laws, Special Session of 1921, page 35, Chapter X.

---

Carriers, 10 C. J., p. 37, n. 9 New, p. 38, n. 18 New.
Constitutional Law, 12 C. J., p. 786, n. 79.
Highways, 29 C. J., p. 370, n. 52 New.
Injunctions, 32 C. J., p. 249, n. 74.
Carriers, 10 C. J., p. 38, n. 17, p. 68, n. 52.
Injunctions, 32 C. J., p. 277, n. 39.

1. See 14 R. C. L. 434.
2. See 6 R. C. L. 81.
4. Jurisdiction of Public Service Commissions over carriers transporting by motor trucks or busses, notes, 1 A. L. R. 1460; 9 A. L. R. 1011.

From Marion: L. H. McMAHAN, Judge.

In Banc.

AFFIRMED.

For appellants there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Wm. P. Ellis.*

For respondents there was a brief over the name of *Mr. Geo. W. Gearhart* with an oral argument by *Mr. Allan H. McCurtain.*

BURNETT, J.—The three defendants compose the Public Service Commission of Oregon. The numerous plaintiffs are properly classified into three divisions. Seventeen of them, according to the statement in the brief of the defendants, are engaged in transporting merchandise and various kinds of property for others over the public highways of the state for compensation and it is claimed by the plaintiffs that this is performed under private contract. Another type of service involved in this suit is that furnished by the Purple Truck Garage Company. It is principally engaged in highway construction wherein, in addition to the transportation of material for that purpose, it processes the same with graders and other appliances, resulting in a finished road surface. An example of the third class is that of James A. C. Tait & Company. It sells building material of various kinds, as an ordinary merchant, and delivers it at its place of business or, if the customer desires, it will, for an additional charge depending upon the length of the haul, deliver it at the place where it is to be used. All the plaintiffs

use the public highways of the state in the transactions outlined above.

The complaint asserts, in substance, that the defendants, in their capacity as the Public Service Commission, are seeking to enforce against the plaintiffs the provisions of Chapter 10, General Laws of Oregon, passed at the special session of 1921, being an act entitled:

"An act providing for supervision and regulation of the transportation of persons and property for compensation over any public highway by motor vehicles, motor trucks, motor busses, bus trailers, semitrailers and other trailers used in connection therewith, and by other motor vehicles; defining what constitutes transportation for compensation; defining transportation companies and providing for the supervision and regulation thereof by the Public Service Commission of Oregon, providing for the enforcement of the provisions of this act and for punishment of violations thereof, and declaring an emergency."

It is said, in substance, that the defendants have caused the arrest and prosecution of the drivers engaged by the plaintiffs in the operation of their trucks and will continue so to do unless enjoined. With appropriate allusion to the various provisions of the statute, the plaintiffs aver that they are not engaged in any way in the transaction of business as defined in the statute and are not subject to its terms. The substance of their contention is that they are engaged purely in the transaction of private business under private contracts and do not profess to serve the public in any sense, but only persons of their selection with whom they choose to contract.

1. It is settled by *Spaulding* v. *McNary*, 64 Or. 491 (130 Pac. 391, 1128), that:

" * * if the threatened enforcement by prosecuting officers of a void statute will affect the property rights of a party, injunction will lie to prevent the menace from being carried into effect; and that the conduct of such officers, in the case indicated, are their personal acts in which the State is not involved."

—citing numerous authorities. See, also, *Chan Sing* v. *Astoria,* 79 Or. 411 (155 Pac. 378).

A sufficient reason for not enforcing the act in question is that it was expressly repealed by Section 40 of Chapter 380, Laws of 1925, which repealing act took effect prior to the commencement of this suit. Another effective reason is found in the opinion of the United States Supreme Court rendered June 7, 1926, in the case of *Frost* v. *Railroad Commission of California,* where that court declared unconstitutional an act couched in almost the identical terms of that in question, on the ground that in effect it compelled a private carrier to assume against his will the duties and burdens of a common carrier.

The Legislative Assembly of this state seems to have recognized that doctrine in Chapter 380 of the Laws of 1925, wherein it takes up the whole subject of motor transportation over public highways and confines its operation substantially to motor carriers, which term the enactment defines thus:

" 'Motor carrier' means every corporation and person, their lessees, trustees or receivers, appointed by any court whatsoever, owning, controlling, operating or managing any motor vehicle used in the business of motor transportation of and for the general public and not operating exclusively within the limits of an incorporated city or town."

By Section 2 of the act it is provided:

"All motor carriers, as the term motor carrier is defined in this act, are hereby declared to be common carriers."

The statute then proceeds to regulate such common carriers and does not profess to affect private carriers.

The distinction between common carriers and private carriers is well established. The private carrier, indeed, transports goods for hire, but he does not hold himself out as obliged to serve the public generally or to serve all who may apply. On the other hand, the common carrier is engaged professedly in public service and he must serve to the extent of his capacity all who apply to him for such service without discrimination and generally, as required by statute, for a fixed and uniform compensation which he may not vary to favor one person or another. In the instant case, the plaintiffs are engaged in private service. They may agree to serve A at a certain compensation and refuse to serve B for even a greater recompense and under the same or similar circumstances. In other words, they have the undoubted right of *delectus personarum.* They are not bound to contract with anybody, but the common carrier engaged, as the new statute says, "in the business of motor transportation of and for the general public," must serve alike, within its capacity, all who may apply for such service.

Because the Statute of 1921, under which the defendants were proposing to act, was repealed and that according to the doctrine of *Frost* v. *Railroad Commission, supra,* it was unconstitutional, the demurrer to the complaint was properly overruled.

For the reason, also, that under the act of 1925, the regulation of the existing statute applies only to those engaged in transportation of and for the

general public, which by the allegations of the complaint does not apply to the present plaintiffs, the demurrer to the complaint was properly overruled and the decree of the Circuit Court enjoining the defendants must be affirmed.                    AFFIRMED.

Affirmed on rehearing October 5, 1926.

ON REHEARING.

(250 Pac. 213.)

For appellants there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Wm. P. Ellis* and *Mr. J. M. Devers.*

For respondents there was a brief over the name of *Mr. George W. Gearhart,* with an oral argument by *Mr. Allen H. McCurtain.*

BURNETT, J.—The three defendants compose the Public Service Commission of Oregon. The numerous plaintiffs are properly classified into three divisions. Seventeen of them, according to the statement in the brief of the defendants, are engaged in transporting merchandise and various kinds of property for others over the public highways of the state for compensation and it is claimed by the plaintiffs that this is performed under private contract. Another type of service involved in this suit is that furnished by the Purple Truck Garage Company. It is principally engaged in highway construction wherein, in addition to the transportation of material for that purpose, it processes the same with graders and other appliances, resulting in a finished road surface. An example of the third class

is that of James A. C. Tait & Company. It sells building material of various kinds, as an ordinary merchant, and delivers it at its place of business or, if the customer desires, it will, for an additional charge depending upon the length of the haul, deliver it at the place where it is to be used. All the plaintiffs use the public highways of the state in the transactions outlined above.

The complaint asserts, in substance, that the defendants, in their capacity as the Public Service Commission, are seeking to enforce against the plaintiffs the provisions of Chapter X, General Laws of Oregon, passed at the Special Session of 1921, being an act entitled:

"An act providing for supervision and regulation of the transportation of persons and property for compensation over any public highway by motor vehicles, motor trucks, motor busses, bus trailers, semitrailers and other trailers used in connection therewith, and by other motor vehicles; defining what constitutes transportation for compensation; defining transportation companies and providing for the supervision and regulation thereof by the Public Service Commission of Oregon, providing for the enforcement of the provisions of this act and for punishment of violations thereof, and declaring an emergency."

It is said, in substance, that the defendants have caused the arrest and prosecution of the drivers engaged by the plaintiffs in the operation of their trucks and will continue so to do unless enjoined. With appropriate allusion to the various provisions of the statute, the plaintiffs aver that they are not engaged in any way in the transaction of business as defined in the statute and are not subject to its terms. The substance of their contention is that they are engaged purely in the transaction of private busi-

ness under private contracts and do not profess to serve the public in any sense, but only persons of their selection with whom they choose to contract.

It is settled by *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128), that:

" * * if the threatened enforcement by prosecuting officers of a void statute will affect the property rights of a party, injunction will lie to prevent the menace from being carried into effect; and that the conduct of such officers, in the case indicated, are their personal acts in which the State is not involved."

—citing numerous authorities. See, also, *Chan Sing* v. *Astoria,* 79 Or. 411 (155 Pac. 378).

2. In ascertaining the judicial value of a statute in litigation in which it is involved, it is necessary to consider not what actually has been done under it but what it authorizes and permits to be done. *Sterett & Oberle Packing Company* v. *Portland,* 79 Or. 260 (154 Pac. 410), opinion by Mr. Justice HENRY J. BEAN. This doctrine was laid down by Mr. Justice ROBERT S. BEAN in *Hood River Lumbering Co.* v. *Wasco County,* 35 Or. 498, 512 (57 Pac. 1017). See also *Leffingwell* v. *Lane County,* 64 Or. 144 (129 Pac. 538).

A *résumé* of the act in question, therefore, will be helpful. The first section defines the terms "corporation," "person," and "transportation company." This latter term is said to mean

"every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor vehicle, motor truck, motor bus, bus trailer, semitrailer or other trailer in connection therewith, used in the business of transportation of persons or property or as a common carrier for compensation over any public highway in this state between fixed

termini, or over regular or irregular routes not operating exclusively within the limits of an incorporated city or town."

"Public highway" is said to mean every public street, road, highway or way in the state. "For compensation" includes transportation of any person for hire or the carrying of any freight or article of commerce for hire in any motor vehicle:

"provided, that the public service commission may exempt from the operation of this act the transportation of freight or passengers by motor vehicles in rural communities not done on a commercial basis; * * ."

Section 2 of the act forbids any corporation or person, as defined in the act, to operate any motor vehicle, motor truck, motor bus, bus trailer, semi-trailer or other trailer for the transportation of persons or property for compensation on any public highway of the state except in accordance with the provisions of the act. Section 3 of the act reads thus in full:

"The public service commission of Oregon is hereby authorized to supervise and regulate every transportation company as defined in section 1 of this act and to fix reasonable rates, fares and charges to be charged by each such transportation company, to prescribe rules and regulations for the governing of all such transportation companies, to prescribe and require such transportation companies to provide adequate facilities for conveyance and transportation, to supervise and regulate the accounts, service and safety of operation of each such transportation company, to require such transportation companies to file annual reports and from time to time to furnish such other data as said commission may require in order to administer this act, and to supervise and regulate such transportation companies in all other matters affecting the relationship of such companies with passengers and shippers, and said commission

may require a uniform passenger or freight manifest to be carried by each vehicle. The public service commission of Oregon shall have power and authority by general order or otherwise to prescribe rules and regulations applicable to any and all such transportation companies. The public service commission of Oregon, in the exercise of the jurisdiction conferred upon it by the constitution and laws of this state, and by this act, shall have the power to make orders and prescribe rules and regulations affecting such transportation companies, notwithstanding the provisions of any charter, ordinance or permit of any incorporated city or town or county, and in case of conflict between any such order, rule or regulation of any such charter provision, ordinance or permit, the order or regulation of the public service commission of Oregon shall in each instance prevail, but cities and towns may enact and enforce reasonable regulatory ordinances including the imposing of regulatory licenses not destructive of the general purposes of this act.''

Section 4 forbids any concern, as defined in the act, to operate any motor vehicle for transportation of persons or property for compensation on any public highway of the state without first having obtained from the Public Service Commission a certificate setting forth the special terms and conditions under which permission is granted for such operation. This permit is not assignable except by authority of the Public Service Commission and it shall not confer any exclusive right to operate over any road or fixed termini, but all others are allowed to operate under like conditions, having obtained a permit therefor on the same terms. Revocation of a permit is provided for on notice. A bond for the protection of the interests of the public is required and security must be given for the payment of all fees or charges due the state and for the faithful carrying out of any permit granted by the commission. The com-

mission is authorized in the execution of the act to require the payment of annual license fees according to the number, weight and size of the vehicle or vehicles owned by the transportation company, the same not to exceed $10 per vehicle and it shall be imposed for the purpose of defraying the expenses of the act and the regulation of the businesses described. The license fees are to be paid into the state treasury monthly, placed to the credit of the general fund and automatically appropriated for the purposes of carrying out the provisions of the act. The expenses of the commission in enforcing the act are to be audited by the Secretary of State and paid out of the moneys thus collected and appropriated after approval by the commission in the same manner as other claims against the state are audited and paid. Penalties are provided by fine or imprisonment for any violation of the statute. The act disclaims any attempt to affect commerce of foreign nations or interstate commerce.

It will be observed that there is nothing said in the act about the regulation of travel on the public highways. No limitation of speed or weight of load or qualifications of motormen, or anything of that kind, is mentioned in the act. The Public Service Commission is given practically unlimited authority to provide rules and regulations which are paramount in authority to any "charter, ordinance or permit of any incorporated city or town or county." The commission has full sanction to prescribe rules and regulations requiring persons and corporations coming within the embrace of the act to provide adequate facilities for conveyance and transportation, to supervise and regulate the accounts, service and safety of operation of every such transportation company, to require annual reports and, from time to time, to

furnish such other data as the commission may demand, and possibly to establish a uniform passenger or freight manifest. In brief, the commission is given authority to apply all the regulations usually visited upon common carriers.

Two men engaged in agricultural pursuits may not, without compliance with all the regulations of the act, as devised, exchange work with each other in transporting their commodities to market. It is true that

"the public service commission may exempt from the operation of this act the transportation of freight or passengers by motor vehicles in rural communities not done on a commercial basis."

The terms "rural communities" and "commercial basis" are not defined by the act. The line of distinction between such a situation and that of a regular, operating private carrier is left entirely to the discretion of the commission. It would seem that the administrative character of the commission is enlarged so as virtually to include legislative features. In brief, the terms of the act forbid private carriers to pursue their usual avocation unless they will submit to being changed into common carriers. No one possessing a motor vehicle may carry anything over the public highways outside of municipal corporations for hire without incurring the penalties of the act, no matter how small the shipment or how short a distance is traveled in the carriage, subject only to the uncontrolled discretion of the commission to exempt such carrier from the operation of the act. A single transaction of transporting for hire a sack of wheat, a bale of hops, or a box of apples without complying with all the detailed minutiae of the act will invoke the penalties of the act.

If it be the intent of the legislature to govern only common carriers, the plaintiffs are not within the category of the act. On the other hand, if *nolens volens*, the plaintiffs are to be compelled to submit to all the detailed regulations of the act and what the commission may prescribe under its terms, making them in very truth common carriers, or quit their business and seek other employment, the case of *Frost* v. *Railroad Commission of California,* 70 L. Ed. 682 (46 Sup. Ct. Rep. 605), decided June 7, 1926, decrees such legislation beyond the power of the state. That case was a construction of the legislation of the State of California in almost precisely terms like the one in hand. The court there said:

"That, consistently with the due process clause of the Fourteenth Amendment, a private carrier cannot be converted against his will into a common carrier by mere legislative command, is a rule not open to doubt, and is not brought into question here. It was expressly so decided in *Michigan Commission* v. *Duke,* 266 U. S. 570, 577, 578 (69 L. Ed. 445, 36 A. L. R. 1105, 45 Sup. Ct. Rep. 191). * * The naked question which we have to determine, therefore, is whether the state may bring about the same result by imposing the unconstitutional requirement as a condition precedent to the enjoyment of a privilege, which, without so deciding, we shall assume to be within the power of the state altogether to withhold if it sees fit to do so. Upon the answer to this question, the constitutionality of the statute now under review will depend.

"There is involved in the inquiry not a single power, but two distinct powers. One of these, the power to prohibit the use of the public highways in proper cases, the state possesses; and the other, the power to compel a private carrier to assume against his will the duties and burdens of a common carrier, the state does not possess."

3. In a clearly reasoned opinion by Mr. Justice SUTHERLAND the court holds that this is beyond the power of the state. On the basis of a reasonable classification in the exercise of the police power the legislature may regulate the use of highways and may even forbid the use of them for some purposes; but it cannot lawfully make an otherwise proper use of them depend upon the compulsion of the user unwillingly to assume the role of common carrier and devote his property to public use.

4. In the present act, as already stated, there is nothing in the statute relating to the use of the highways. The commission is given arbitrary power to apply the act when and where it will, governed only by its own discretion. Whether the businesses are within the category of the act as common carriers or whether they are metamorphosed into such carriers at the will of the commission cannot affect the case. In either event, they are not lawfully subject to the statute.

The demurrer to the complaint was properly overruled and the decree of the Circuit Court enjoining the defendants must be affirmed.      AFFIRMED.

RAND, J., being absent, did not participate in this opinion.

BEAN, J., concurs in the result.