FLORA C. MOONEY *vs.* N. F. TUCKERMAN.

FEBRUARY 15, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. Prior to 1922 an act of the General Assembly existed relative to motor vehicles and their operation on the highways of this State. This act, as modified, in General Laws 1923, Chapter 98, comprehensively defined motor vehicles and required their registration by the State Board of Public Roads. In 1921 respondent was the operator of a garage and owner of a Reo truck and bus. He had complied with all registration requirements of existing law and continued after 1923 to comply with Chapter 98. He made a contract with certain men who worked at the Bradford Mill in Westerly by which he agreed to take them each day from his garage in Westerly to the mill yard in the morning and to bring them back from the mill yard at night. They paid him a fixed price per week arranged in advance. He neither discharged, solicited nor picked up passengers en route and the same group of men continued to be carried on each trip until respondent was enjoined in 1926.

In 1922 an act was passed, which now appears as General Laws 1923, Chapter 254, entitled "Of Public Service Motor Vehicles Operating Over Fixed Routes." In this act Section 1 defines a "public service motor vehicle" as including all motor vehicles defined in Chapter 98 which are "used for the transportation of passengers for hire." It then proceeds to define "jitney," a word not found in Chapter 98. "The term 'jitney,' shall include any motor bus or other public service motor vehicle operated in whole or in part upon any street or highway in such manner as to afford a means of transportation similar to that afforded by a street railway company, by indiscriminately receiving or discharging passengers; or running on a regular route or over any portion thereof; or between fixed termini." Section 2 provides that any carrier falling within the terms of Section 1 is a "common carrier" and subject as such to the control of the public utilities commission as to "routes, fares, speed, schedules, continuity of service, and the convenience and safety of passengers and the public." Section

3 forbids the operation of a jitney until the owner shall have obtained from the public utilities commission a certificate specifying the route proposed to be traversed, the number of passengers to be taken at one time, the service to be furnished and that "public convenience and necessity require its operation over such route." Then follow other sections relating to those who may be granted certificates, the proceedings relative to hearings prior to such granting including the right of any city or town through which the route passes to participate therein and to ask for a modification of a certificate already granted. The utilities commission is given control of the number of passengers to be carried, operation, safety and sanitary conditions and provision is made for giving of a bond at a specified sum per passenger and fixing a penalty for violation of the statute.

In 1925, complainant obtained a certificate of necessity and convenience under Chapter 254 to operate a jitney between Westerly and Bradford. Respondent, asserting that Chapter 254 did not apply to his carriage of passengers, gave no heed to its requirements. Complainant filed this bill seeking to enjoin respondent from carrying the workmen above mentioned. After hearing on an agreed statement of facts, the Superior Court in the decree granted an injunction restraining respondent from further operating his motor vehicles. From this decree the case is here on appeal.

At the hearing in this court counsel for the Rhode Island Coach Lines, Inc., asserting that since the hearing in the Superior Court it had acquired all rights and interest in complainant's certificate of convenience and necessity and that complainant had no further interest in the prosecution of the case, asked that said coach lines be substituted as complainant. Respondent was willing to assent thereto. We expressly reserved decision on this motion. We doubt the propriety at this stage of the proceedings of such substitution and decline to grant the motion. Respondent, however, having been enjoined from further carriage of

40

those with whom he contracted, is entitled to have his rights determined since nothing on the record indicates that complainant has withdrawn the proceedings or that the injunction against respondent has been vacated.

The vital question is whether respondent was operating in violation of Chapter 254. Plainly respondent was not furnishing transportation similar to that afforded by a street railroad company by indiscriminately receiving or discharging passengers. Complainant urges that, because respondent was operating over a regular route and between fixed termini, compliance with Chapter 254 was required. We find nothing in the statement of facts to show operation over a regular route. Travel between different villages in Westerly by no means requires operation over a regular route unless there be but one route possible and of this we have no evidence.

It is true in some respects similar to street railway service respondent operated between fixed termini, viz., his garage and Bradford Mill yard  It must be admitted that if he indiscriminately received or discharged passengers en route, or at either end thereof or held himself out to do so, he would be subject to Chapter 254 but he asserts that he is engaged in business as a private carrier and is not offering service available to the public as in the case of a common carrier. *Tracy* v. *Grand Concourse Service Co.*, 199 App. Div. 348; *McGregor* v. *Gill*, 114 Tenn. 521. To this complainant replies that the terms of the statute make anyone who operates a motor vehicle carrying passengers for hire a common carrier and as such subject to control of the utilities commission, irrespective of the common law rules by which to test "common" as distinguished from "private" carriage.

The type of statute before us is of recent adoption in numerous states. It came with the development of the so-called jitney business as a competitor with street railways. A jitney is a "motor vehicle that carries passengers for a small fare." Funk & Wagnalls, 623. The statutes require

certificates of public convenience and necessity. Berry on Automobiles, 5th ed. § 1745 sqq. In California, Michigan, West Virginia and Nevada, jitneys are included which travel "between fixed termini" as in Rhode Island. In various states a literal construction of the statute would include all jitneys carrying passengers for hire over public streets and some states have so construed the statutes. *Frost* v. *R. R. Com. of Calif.*, 70 Calif. Dec. 457, reversed in 271 U. S. 583; *Public Service Com.* v. *Fox*, 160 N. Y. Supp. 59; *Fort Lee Transportation Co.* v. *Edgewater*, 133 Atl. 424 (N. J.). Cf. *Terminal Taxi Co., Incorporated* v. *Kutz*, 241 U. S. 252. In other states the courts have applied these statutes more narrowly, *State* v. *Downs*, 79 N. H. 505, and often only to a business touched with a public interest, *i. e.*, so-called public utilities. *State* v. *Smith*, 252 Pacif. 1011 (Ariz.); *State* v. *Nelson*, 65 Utah, 457; *State* v. *McLemore* (Tenn.) 290 S. W. 386; *Towers* v. *Wildason*, 135 Md. 677.

In ascertaining the meaning of Chapter 254 the general purpose of the act as shown by its provisions must be kept in mind. The aim of Chapter 254 is clearly to give the public utilities commission a right to exercise a supervisory power on public highways over the movement of passenger motor vehicles furnishing transportation for hire and thereby to secure adequate and safe means of transportation at such times and over such routes as will serve the general public. Public service is the test in granting a certificate of convenience and necessity. *Abbott* v. *Pub. Util. Com.*, 48 R. I. 196. To so construe the act as declaring that, irrespective of the nature of the carrier's business, defendant is a common carrier is to invite attack on its constitutionality. *Frost* v. *R. R. Com. of Calif., supra.* A court having a choice of constructions should proceed cautiously in adopting such an one. *State* v. *Smith, supra.* We are expressing no opinion whether the legislature under its police power might subject respondent's business done over the public streets to regulation by the utilities commission; see *Craig* v. *Pub. Util. Com.*, 115 Ohio St. 512; *Cushing* v.

*White,* 101 Wash. 172; *Cotter* v. *Stoeckel,* 97 Conn. 239; *Carson* v. *Woodram,* 95 W. Va. 197, because the language of Chapter 254 need not be read as doing so. The general principle is that where "a motor vehicle operator is in fact an existing private carrier the legislature can not by legislative fiat compel him to become a public or common carrier so as to be subject to regulations which are applicable only to common carriers." 42 C. J. 648; *Frost &c. Co.* v. *Calif. R. R. Com.* 271 U. S. 583; *Michigan Pub. Util. Com.* v. *Duke,* 266 U. S. 570; *State* v. *Nelson,* 65 Utah, 457; *Hissem* v. *Guran,* 112 Ohio St. 59; *State* v. *Vaughan,* 97 W. Va. 563; *State* v. *Smith, supra.* Hence in construing this statute we ought not to hold that the act was intended to make respondent a common carrier merely because he operated "between fixed termini." The entire statute indicates an intention to deal with public carriers only. The types of vehicles subject to control are those engaged in public service. The statute is primarily concerned with the nature of the vehicle's use. The legislature did not intend to characterize a private business as public merely because done "between fixed termini." The act's provisions are inappropriate to control carriers who have no interest in the necessities or conveniences of the general traveling public. The utilities commission exists to control the conduct of business affecting the interests of the public. The legislature did not intend in this act to give it plenary power over operation of private jitneys in which the general public has no interest. Respondent is not conducting a public utility nor holding himself out as doing so. No question of general public welfare is or can be involved in respondent's operation of his vehicles under the agreed statement of facts. The public has no greater interest than in any other private automobile as to when or over what route or how frequently respondent travels, nor in the amount he charges those whom he carries. Respondent's facilities are not available to the public. We do not think it could be urged seriously that the utilities commission could on the facts presented

grant a certificate of public convenience or necessity to respondent. To read the act as requiring respondent to obtain such a certificate of necessity as a condition precedent to operation where on the facts such a certificate could not be issued would be tantamount to holding that Chapter 254 intended to absolutely prevent private operation of motor vehicles for paid carriage of passengers between fixed points. This has been sufficiently commented upon in *Frost* v. *Calif. R. R. Com., supra.* See also 42 C. J. 697.

Our conclusion is that Chapter 254 does not apply to the motor vehicles specifically hired to carry workmen mentioned in the agreed statement of facts to their place of employment. *People* v. *Carr*, 231 Mich. 246.

The respondent's appeal is sustained; the decree appealed from is reversed and the cause is remanded to the Superior Court for further proceedings.

*Herbert W. Rathbun*, for complainant.
*Clarence E. Roche*, for respondent.